**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JANE JONES,

     Plaintiff,

     v.

DONALD TRUMP, in his official capacity as
President of the United States; JAMES R.
MCHENRY III, in his official capacity as Acting
Attorney General of the United States; WILLIAM
LOTHROP, in his official capacity as Acting
Director of the Federal Bureau of Prisons,

     Defendants.

Civil Action No. 1:25-cv-401

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.     This Action is a federal constitutional challenge to Sections 4(a) and 4(c) of

Executive Order 14166, titled "Defending Women from Gender Ideology Extremism and

Restoring Biological Truth to the Federal Government," ("Executive Order 14166") which

President Donald Trump issued just hours after his inauguration on January 20, 2025. The Order

directly targets transgender individuals by attempting to deny them legal recognition under

federal law and to strip them of long-established legal protections with the stroke of a pen. Under

Sections 4(a) and 4(c) of the Order, transgender women who are incarcerated in federal prisons

will be unlawfully transferred to men's facilities and denied medically necessary healthcare.

2.     Plaintiff Jane Jones is an adult transgender woman who, until ███████████

was incarcerated in ███████████████████████████████████

████████████████████████████████████████████. Jane Jones is

diagnosed with gender dysphoria, a rare but serious medical condition and disability. The

medical standard of care for treatment of gender dysphoria is to allow a transgender person to

live in a sex different than their birth sex through counseling, medications, surgical care, and

social transition.

3.     Consistent with this standard of care, Jane Jones has lived as a woman and has

taken hormones continuously since ████. Additionally, she has had sex- reassignment surgeries,

including a vaginoplasty, and legally changed her name and sex markers on her identifications to

reflect that she is a woman. During her term of incarceration, she has always been treated as a

woman by federal correctional officials and her peers. Other than during a brief period of time

after the issuance of Executive Order 14166, she has never been housed in a men's facility.As of

the date of this filing, publicly available records from the Bureau of Prisons (BOP) identified her

sex as "female."

4.     On ████████████, BOP officials removed Jane Jones from the general

population of the minimum-security ████████████ and transferred her to the men's unit of the

medium security facility ████████████. BOP officials provided her no prior notice of the

transfer and did not allow her to bring the vast majority of her belongings. They placed her in the

Special Housing Unit ("SHU") within the men's prison, which Plaintiff described as a "shoebox"

where she felt like a "zoo animal" that everyone comes to stare at.

5.     Jane Jones feared that she would be imminently transferred to a men's general

population unit because a high-ranking prison official came to her cell on ████████████, and

asked her what men's unit she would like to be sent to.

6.      On ███████████, Jane Jones was transferred back to the ███████████. She now fears that at any moment she will again be transferred to a men's prison pursuant to Executive Order 14166.

7.      Jane Jones is not safe in any men's prison. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will be at a high risk of worsening gender dysphoria, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

8.      Jane Jones is also at imminent risk of losing access to the medical care she needs to treat her gender dysphoria. Executive Order 14166 singles out transgender people in order to deny them essential healthcare while continuing to provide such healthcare to others. The Order categorically bans this care regardless of medical necessity. It prohibits prison medical providers from treating transgender patients' gender dysphoria on an individual basis according to their independent medical judgment. This blanket ban will deprive Jane Jones of essential medication she has taken continuously over a decade, putting her at high risk of serious harm.

9.      Jane Jones brings claims for violations of the Fifth Amendment to the United States Constitution; the Eighth Amendment to the United States Constitution; the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*; and the Administrative Procedure Act, 5 U.S.C. §§ 701–06. Jane Jones seeks declaratory and injunctive relief to enjoin enforcement of Sections 4(a) and 4(c) of Executive Order 14166. Without the injunctive relief sought, Jane Jones will experience irreparable injury.

**JURISDICTION AND VENUE**

10.     This action arises under the Constitution of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

11.     This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and 65, and this Court's inherent equitable powers.

12.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(A) and (B) because all defendants reside in the district and a substantial part of the events giving rise to the claim occurred in the district.

**PARTIES**

13.     Plaintiff Jane Jones is a transgender adult woman. Jane Jones is a pseudonym.

14.     Defendant Donald Trump is sued in his official capacity as the President of the United States. Defendant Trump issued and will oversee the implementation of Executive Order 14166.

15.     Defendant James R. McHenry III is sued in his official capacity as Acting Attorney General of the United States. The Acting Attorney General oversees the Department of Justice, including the Bureau of Prisons, and has responsibility for overseeing the enforcement and implementation of Sections 4(a) and 4(c) of Executive Order 14166 with respect to the Bureau of Prisons.

16.     Defendant William Lothrop is sued in his official capacity as Acting Director of the Federal Bureau of Prisons (BOP). The Acting Director of BOP has responsibility for overseeing enforcement and implementation of Executive Order 14166 by all BOP staff.

## FACTS

**I.    Jane Jones's Sudden and Unjustified Transfer to a Men's Facility**

17.    The BOP maintains separate housing facilities for men and women. With respect to transgender women, the BOP applies an individualized assessment process to determine appropriate housing, consistent with the safety and security of all individuals. Based on this assessment, transgender women may be housed in women's facilities when doing so promotes safety and security.[1]

18.    Jane Jones has been housed in women's facilities within the BOP since her sentencing.

19.    On January 20, 2025, the President issued Executive Order 14166 directing the BOP to disregard its established policy and any associated safety and security risks concerning the housing and care of transgender women.

20.    Pursuant to Executive Order 14166, the BOP removed Jane Jones from the general population of the low-security women's facility where she had been housed and transferred her to a medium-security men's facility where she was placed in the Special Housing Unit (SHU).

21.    She was also informed that she would be transferred to another men's facility and would be imminently placed in a male general population unit.

22.    On ██████████, Jane Jones was then transferred back to the women's facility.

---

[1] U.S. Dep't of Just., Transgender Offender Manual §§ 5–6, available at https://www.bop.gov/policy/progstat/5200-08-cn-1.pdf.

23.    Jane Jones remains at risk of being transferred to a men's facility, as she was before, and has no ability to contest the Executive Order or her placement in a men's prison.

24.    Jane Jones's removal from general population, placement in the SHU of a men's prison, and anticipated second transfer to a men's facility have caused her significant distress and raise serious concerns regarding her safety and well-being.

## II.    **Gender Dysphoria**

25.    Gender dysphoria is a serious medical condition marked by the significant distress or impairment that occurs when a transgender individual is made to live in their birth sex. The condition is highly treatable. When left untreated, however, it causes serious physical and emotional harms.

26.    Scientific and medical research also shows that gender dysphoria has a physiological and biological etiology.

27.    The only current, medically accepted treatment for gender dysphoria is to enable a transgender person to live in the sex different than their birth sex.

28.    The medical and scientific community recognize well-established protocols for supporting a person to go through gender transition, the treatment that allows a transgender person to live in their target sex. These protocols are endorsed by the major medical and mental health associations in the United States, including but not limited to the American Medical Association, the American Psychiatric Association, the American Psychological Association, and the Endocrine Society.

29.    Under these accepted protocols, treatment for gender dysphoria can involve any combination of social transition, medications, including hormones, and a range of surgeries. The

treatment prescribed for a particular patient depends on an individualized assessment of the patient's health and needs. Gender transition care, including hormone therapy, is a highly effective treatment for gender dysphoria.

### III.    Jane Jones's Gender Dysphoria Diagnosis and Gender Transition

30.    Jane Jones was born on ███████████. Her sex at birth was identified as male and her parents gave her a male-associated name. From a young age, Jane Jones gravitated toward traditionally feminine activities, including playing with dolls and liked to wear feminine clothing. Jane Jones recalls her earliest memories as being shaped by tendencies that she recognized as intrinsically female. As she grew older, her sense of being a woman intensified.

31.    Jane Jones attended ███████████ and became an ███████████. She eventually owned and operated an ███████████. But Jane Jones still struggled with feelings that her birth sex did not match her female identity.

32.    Jane Jones began seeing a therapist in approximately ████. She was diagnosed with gender dysphoria. In ████, she began hormone therapy and began living as a woman.

33.    In ████, Jane Jones received facial reconstructive and breast augmentation surgery. In January ████, she received a vaginoplasty.

34.    Around ███████████, Jane Jones legally changed her name and her gender marker to female on her driver's license, her ███████████, with ████████, and with the social security office.

35.    On ███████████ Jane Jones was convicted of a non-violent crime ████ ███████████ and was sentenced to less than ████████ in prison.

36.    She was sent to a women's facility.

**IV.** **Executive Order 14166 Will Cause Jane Jones Irreparable Injury**

37.    Executive Order 14166 began causing harm to Jane Jones almost immediately. As a result of the Order, she has already suffered significant distress. The Order also raises serious concerns for her safety and well-being going forward.

38.    Section 2 of the Order includes a definition of "sex" that is intentionally designed to discriminate against transgender people. Specifically, Section 2 defines "sex" as "an individual's immutable biological classification as either male or female." In turn, it defines "male" as "a person belonging, at conception, to the sex that produces the small reproductive cell," and "female" as "a person belonging, at conception to the sex that produces the large reproductive cell." It includes these definitions to preclude transgender people from being able to live in a sex different than their birth sex and to deny them equal treatment.

39.    Section 4(a) of the Order then directs federal agencies to implement this discriminatory provision, including requiring the Attorney General to categorically bar all transgender women from ever being housed in women's prisons with no individualized consideration of their safety and security. That section acknowledges that the requirement contradicts federal regulations found at 28 C.F.R. § 115.41 directing the Attorney General to amend those regulations as necessary to implement Section 4(a).

40.    On the evening of ███████████, BOP officials informed Jane Jones that because of the Order, she would be transferred to a men's facility. This was a shock to Jane Jones, who at the time, was being held in a minimum-security ████████. Jane Jones had always been housed with other women and given access to all items available to other women. She was able to live as a woman in all respects at the ████████.

8

41.     BOP officials made Jane Jones change into an orange jumpsuit and shoes, which denotes high risk inmates, gave her men's boxer shorts, hand-cuffed her, and transferred her to a men's medium security facility at ███████████.

42.     Jane Jones asked why she was being transferred, and the Corrections Officers said that they had been told to bring her to the men's ███. Jane Jones asked if she could bring her possessions and she was denied that request, except that the corrections officers allowed her to bring what remained of her hormone therapy medication (a less than 30-day supply). They advised, however, that she would not be permitted to obtain another prescription from the prison once these medications run out.

43.     In both female prisons in which she has was housed since receiving her sentence, Jane Jones has been subjected to searches by female Corrections Officers only. Jane Jones also has a flawless disciplinary record.

44.     Jane Jones was placed in the Special Housing Unit ("SHU") upon transfer to the men's prison. She was housed alone in solitary confinement in a tiny cell with nothing to do all day. She had no one to talk to and did not go outside. She was only provided with men's toiletries.

45.     Jane Jones has expressed that she felt like a zoo animal. The corrections officers went by the small window to her cell and looked at her. Male guards were also able to watch her use the restroom, as she was under 24/7 video surveillance. She no longer had access to email or to other inmates. She was only allowed very limited contact with her spouse.

46.     Jane Jones greatly fears what will happen when BOP terminates her medical treatment. Jane Jones has been taking hormones for ██ years. If she stops taking hormones, the

physical and psychological impact will be devastating. This will cause her extreme emotional distress and could cause physical harm given how long she has been taking the hormones. Moreover, because she no longer has the anatomy to produce male sex hormones, she needs replacement hormones in order to maintain bone density and blood pressure regulation.

47.     On ████████████, a BOP official came to Jane Jones and informed her she would be placed in general population.

48.     Though Jane Jones was transferred back to a women's facility on ████████ ██, she lives in constant fear of being transferred to a men's prison again.

49.     Other than the three days in which she was housed in the SHU, Jane Jones has never been housed in a men's facility.

50.     If she is transferred back to a men's facility, she will face an extremely high risk of sexual victimization and sexual and physical violence. She will not be safe. Evidence, research, case law, and practical experience show that transgender women housed in men's prisons face near constant sexual harassment and extremely high levels of violence and sexual assault. Federal regulations recognize transgender status as a risk factor for sexual assault. *See* 28 C.F.R. §§ 115.41(d)(7), 115.42. A 2013 study by the Department of Justice estimated that 35% of transgender inmates in state and federal prisons were sexually assaulted between 2007 and 2012, nearly ten times the rate for the general incarcerated population. U.S. Dep't of Just. Off. of Justice Programs, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2011–*

*12* (2014).[2] The rate of sexual assault reported by transgender inmates in jails and detention centers was around the same as for those in prisons. *Id.*

51.     In a men's facility, Jane Jones may also be subjected to humiliating, terrifying, and dangerous circumstances like being strip searched by male correctional officers and forced to shower among men, with her female body, including her breasts and female genitalia, exposed and vulnerable to sexual violence.

52.     Further, Jane Jones will predictably experience worsening gender dysphoria in a men's facility. She may be forced to wear men's clothing and undergarments, prevented from styling her hair as female, and referred to as a man. Treating a transgender woman with gender dysphoria as a man is known to intensify dysphoria, undermine medical treatment, and increase emotional distress, and it can precipitate self-harm.

53.     Section 4(c) of the Order will also cause Jane Jones serious, irreparable injury. Section 4(c) eliminates Jane Jones' ability to continue taking female hormones to treat her gender dysphoria and that her body has adjusted to receiving for the last ██ years. Specifically, the provision requires the Attorney General to "ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex."

54.     The BOP is aware that gender dysphoria creates a serious medical need for gender transition treatments, including hormone therapy, and that Jane Jones has a serious medical need for such treatment. BOP policy expressly allows hormone therapy as a treatment for gender

---

[2] Findings available at https://www.ojp.gov/library/publications/sexual-victimization-prisons-and-jails-reported-inmates-2011-12. Statistics specific to transgender adults are available through a supplemental table at https://bjs.ojp.gov/content/pub/pdf/svpjri1112_st.pdf.

dysphoria based on an "individualized assessment" by medical staff.[3] If providers determine that hormone therapy is appropriate for an individual, hormone therapy "will be provided."[4] Consistent with this policy, the BOP has consistently provided hormone therapy to Jane Jones throughout her incarceration.

55.    If Jane Jones's medically necessary treatment for gender dysphoria is terminated or restricted under Section 4(c), she will be at a well-known and substantial risk of serious harm. Medical professionals experienced in the treatment of gender dysphoria and in the prolonged use of hormones for medical care recognize that the abrupt termination and ongoing denial of hormone therapy can have disastrous consequences, including serious risk of permanent physical and emotional harm, severe danger of self-mutilation, and suicidal ideation and attempts. This harm is amplified for transgender individuals like Jane Jones who have undergone surgeries that prevent them from producing endogenous hormones.

**V.    Executive Order 14166 Was Motivated By Discriminatory Animus**

56.    Executive Order 14166 was motivated by a sex-based discriminatory purpose and animus against transgender people. The text of the challenged Executive Order describes transgender people's existence as a "false claim." It also scapegoats transgender people, declaring that the existence of transgender people "has a corrosive impact . . . on the validity of the entire American system."

---

[3] U.S. Dep't of Just., Transgender Offender Manual § 8, available at https://www.bop.gov/policy/progstat/5200-08-cn-1.pdf.

[4] *Id.*

57.    Defendant Trump has been transparent about his hostility toward transgender people and openly stated his intentions to create legal obstacles to eliminate legal protections for transgender people and to deter them from obtaining medical care or being able to live in a sex other than their birth sex. On November 15, 2022, when he announced his candidacy for President, he explicitly promised to target transgender Americans through executive action.[5] He pledged a "day one" executive order to "cease all programs that promote the concept of sex and gender transition at any age."[6]

58.    Throughout his campaign, Defendant Trump repeatedly characterized transgender Americans in dehumanizing terms, referring to them as "deranged,"[7] and victims of "madness"[8]

---

[5] ABC Action News, *(Full Speech) Former President Trump Announces 2024 Presidential Bid* at 48:40-49:13, YouTube (Nov. 15, 2022), https://www.youtube.com/watch?v=8tSYwJ1_htE; *id.* at 50:39-53 (indicating he would attempt to ban transgender people from military service).

[6] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, Trump Vance: Make America Great Again! 2025 (Feb. 1, 2023), https://www.donaldjtrump.com/agenda47/president-trumps-plan-to-protect-children-from-left-wing-gender-insanity.

[7] Gabriel Bertrand, *Trump's Shocking Admission Exposes GOP's Bigoted Agenda*, Medium (June 17, 2023), https://medium.com/illumination/trumps-shocking-admission-exposes-gop-s-bigoted-agenda-e981becb2c5f.

[8] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* n.6.

and "insanity."[9] He falsely claimed transgender identity was "never heard of in all of human history"[10] and described transgender healthcare as "mutilation."[11]

59.    Defendant Trump's campaign devoted substantial resources to promoting anti-transgender policies, spending approximately $215 million on advertisements vilifying transgender Americans.[12] These advertisements comprised over 40% of all pro-Trump campaign messaging in the weeks before the 2024 election.[13]

---

[9] Joe Middleton, *Trump Attacks Transgender Rights at Waco Rally Saying He Will Ban 'Disfigurement of Our Youth'*, The Independent (Mar. 26, 2023), https://www.independent.co.uk/news/world/americas/donald-trump-transgender-waco-rally-b2308177.html; https://medium.com/illumination/trumps-shocking-admission-exposes-gop-s-bigoted-agenda-e981becb2c5f; Donald J. Trump, Truth Social (Dec. 18, 2023), https://truthsocial.com/@realDonaldTrump/posts/111599880929254153; *Trump and Vance Make Anti-Transgender Attacks Central to Their Campaign's Closing Argument*, NBC News (Nov. 1, 2024, 10:23 AM), https://www.nbcnews.com/nbc-out/out-politics-and-policy/donald-trump-jd-vance-transgender-2024-election-rcna178390; https://idahonews.com/news/nation-world/trump-vows-to-remove-transgender-insanity-and-critical-race-theory-from-us-schools-phoeniz-arizona-woke-speech-usa-donald-president-white-house-education-department-crt-trans-gender-lgbt.

[10] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* n.6.

[11] *Id.*

[12] Audrey Kemp, *What Trump's Win – and $215m Worth of Anti-Trans Ads – Mean for the Future of Campaigning*, The Drum (Nov. 6, 2024), https://www.thedrum.com/news/2024/11/06/after-donald-trump-s-victory-marketers-weigh-their-role-countering-divisive.

[13] Lauren Barrón-López et al., *Why Anti-Transgender Political Ads Are Dominating the Airwaves this Election*, PBS News (Nov. 2, 2024 5:35 PM), https://www.pbs.org/newshour/show/why-anti-transgender-political-ads-are-dominating-the-airwaves-this-election.

60.     Defendant Trump's official campaign platform included a "Plan to Protect Children from Left-Wing Gender Insanity," which promised to deny legal recognition to transgender Americans and restrict access to medically necessary healthcare.[14]

61.     On December 23, 2024, after winning the election, Defendant Trump reaffirmed his intent to implement discriminatory policies through executive action, stating "with a stroke of [his] pen on day one," he would "stop the transgender lunacy" and "get transgender out of the military and out of our elementary schools and middle schools and high schools."[15]

62.     Executive Order 14166, issued on Defendant Trump's first day in office, implements these campaign promises virtually verbatim, demonstrating that the discriminatory animus expressed throughout his campaign was the driving force behind the Order's restrictions on medical care and housing.

63.     The timing, content, and context of Executive Order 14166 demonstrate it was motivated by and implements the same discriminatory animus Defendant Trump repeatedly expressed during his campaign, rather than any legitimate government purpose.

## CLAIMS FOR RELIEF

### COUNT I

**Challenge to Sections 4(a) and 4(c)**
**Fifth Amendment to the United States Constitution**
**Due Process Clause - Deprivation of Equal Protection of the Laws**
**Against All Defendants in Their Official Capacities**

---

[14] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, supra n.6.

[15] Azcentral.com and The Arizona Republic, *Turning Point USA Donald Trump Full Speech: The 'Golden age of America' Begins Now, Says Trump*, YouTube (Dec. 23, 2024), https://www.youtube.com/watch?v=XuIeXJw6BA8, at 57:02-24.

64.     Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

65.     Like the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment prohibits unwarranted discrimination by the federal government.

66.     Sections 4(a) and 4(c) unjustifiably discriminate based on sex. They are facial sex classifications and use explicitly sex-based language to dictate government decision-making. Section 4(a) compels the BOP to exclude "males" from "women's prisons." Section 4(c) prohibits the use of federal funds for any medical treatment prescribed "for the purpose of conforming an inmate's appearance *to that of the opposite sex*." Section 4(c)'s express purpose is to prohibit all medical treatment deemed inconsistent with birth sex.

67.     Sections 4(a) and 4(c) require the BOP to treat incarcerated people differently depending on their sex. Under section 4(a), women who are not transgender can go on living in a women's facility, while otherwise similarly situated transgender women must be transferred to a men's facility based on their male birth sex. Similarly, under Section 4(c), women who are not transgender are able to obtain the same medical treatments that are prohibited if they are prescribed for transgender women.

68.     Under the Fifth Amendment, sex classifications are subject to heightened scrutiny and are presumptively unconstitutional.

69.     Sections 4(a) and 4(c) also discriminate based on transgender status. Section 4(a) requires dangerous transfers to men's facilities for all transgender women, solely because they are transgender. Section 4(c) denies medically necessary healthcare to transgender people, solely because they are transgender.

70.    Under the Fifth Amendment, classifications based on transgender status are sex-based classifications that are subject to heightened scrutiny.

71.    Classifications based on transgender status are also subject to heightened scrutiny because transgender people constitute a quasi-suspect class. Transgender people are a discrete and identifiable group of people with one shared distinguishing characteristic: they identify and seek to live as a sex different than their birth sex. This defining characteristic bears no relation to a transgender person's ability to contribute to society. Nevertheless, transgender people have faced historical discrimination in law and in fact, and they have been unable to secure equality through the political process.

72.    There is no legitimate penological purpose or other legitimate basis for Section 4(a)'s dangerous transfer requirement or Section 4(c)'s categorical healthcare ban.

73.    Neither Section 4(a) nor Section 4(c) is narrowly tailored to further a compelling government interest or substantially related to an important government interest. Moreover, Sections 4(a) and 4(c) are not even rationally related to a government interest. Accordingly, these aspects of Executive Order 14166 violate the Fifth Amendment.

74.    If Section 4(a) and 4(c) are implemented, Jane Jones will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT II

**Challenge to Section 4(a)**
**Eighth Amendment to the United States Constitution**
**Failure to Protect**
**Against All Defendants in Their Official Capacities**

75.    Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

76.    Under the Eighth Amendment, Jane Jones is entitled to be free from a known and substantial risk of serious harm while in BOP custody.

77.    Placing Jane Jones in a men's prison will pose a substantial risk of serious harm, including an extremely high risk of violence and sexual assault from other incarcerated people and BOP staff. In a men's prison, Jane Jones will also be at high risk of worsening gender dysphoria, which can lead to serious physical and mental health conditions including severe depression and suicidality. These risks are obvious, well-documented, and well known to BOP officials.

78.    The risk of sexual violence to transgender people in prison is recognized in existing federal regulations. 28 C.F.R. § 115.41(d)(7) requires BOP officials to consider an individual's transgender status as a factor increasing their "risk of sexual victimization." An individual's sexual victimization risk must be considered as part of all housing and transfer decisions. *Id.* § 115.41. Decisions about whether to house a transgender person in a men's or women's facility must be made "on a case-by-case basis" to ensure the individual's "health and safety" and the security of the facility. *Id.* § 115.42(c). Given the extremely high safety risks for transgender people in BOP custody, housing placements for transgender people "shall be reassessed at least twice a year to review any threats to safety." *Id.* § 115.42(d).

79.    Section 4(a) of the Order contains a citation to 28 C.F.R. § 115.41, indicating that Defendant Trump was aware of transgender women's heightened risk of sexual victimization and the federal regulatory scheme that requires individualized housing placements to ensure their

safety. Nevertheless, Defendant Trump intentionally directed the Attorney General to "amend[]" § 115.41 "as necessary" to ensure that all transgender women would be transferred to men's facilities, no matter how dangerous, without regard for their safety and security. The President's intentional disregard of a known and substantial risk of serious harm to transgender women in BOP custody, including Jane Jones, violates the Eighth Amendment.

80.    Defendants McHenry and Lathrop are well aware of the grave risks Jane Jones will face if she is transferred to a men's prison, but they are actively enforcing Section 4(a) and caused BOP officials to transfer Jane Jones to a men's facility at least once already anyway. Their decision to disregard the known and substantial risks of serious harm violates Jane Jones's rights under the Eighth Amendment.

81.    If Section 4(a) is implemented, Jane Jones will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT III

**Challenge to Section 4(c)**
**Eighth Amendment to the United States Constitution**
**Medical Deliberate Indifference**
**Against All Defendants in Their Official Capacities**

82.    Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

83.    A prison official who has knowledge of an individual's serious need for medical care and intentionally refuses to provide that care acts with deliberate indifference and therefore violates the Eighth Amendment's prohibition on cruel and unusual punishment.

84.     Jane Jones has a serious medical need for hormone therapy as treatment for her gender dysphoria, which is a rare and serious health condition. Abrupt termination of this treatment would violate the applicable standard of care and subject her to a known and substantial risk of serious harm.

85.     Terminating Jane Jones's hormone therapy would contravene her medical providers' consistent professional judgment that she needs continuous treatment for her gender dysphoria, as the BOP has previously recognized by placing her on this medication. Denying Jane Jones this medically necessary healthcare would constitute deliberate indifference to her serious medical needs and would violate the Eighth Amendment's prohibition on cruel and unusual punishment.

86.     Section 4(c) of the Order, which was issued by Defendant Trump and is being implemented by all other Defendants, establishes a blanket rule banning medically necessary treatments for all transgender people in BOP custody, without consideration of any individual's medical needs or their healthcare providers' independent medical judgment. As such, Section 4(c) constitutes deliberate indifference to the serious medical needs of all transgender people in BOP custody and violates the Eighth Amendment's prohibition on cruel and unusual punishment.

87.     If Section 4(c) is implemented, Jane Jones will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT IV

**Challenge to Section 4(a)**
**Rehabilitation Act of 1973, Section 504**

**Failure to Accommodate a Disability**
**Against All Defendants in Their Official Capacities**

88.     Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

89.     Jane Jones has a current diagnosis of gender dysphoria as well as a record of gender dysphoria that is known to BOP officials.

90.     Gender dysphoria is a serious medical condition that qualifies as a disability. It is a physical impairment that substantially limits the major life activities of interacting with others, reproduction, social and occupational functioning, and caring for oneself.

91.     Housing Jane Jones in a women's facility is a reasonable accommodation for her gender dysphoria and is part of the recommended treatment protocol set forth by the applicable standards of care and clinical practice guidelines.

92.     Continuing to house Jane Jones at the ███████ would not materially impair the safe and efficient operation of the facility or the BOP generally, present a safety hazard to any staff or other incarcerated person, threaten the security of the facility, or otherwise cause undue hardship.

93.     Continuing to house Jane Jones at the ███████ would not fundamentally alter the nature of any service, program, or activity.

94.     Involuntarily transferring Jane Jones to a men's facility under Section 4(a) of the Order would be a cruel and unnecessary revocation of this reasonable accommodation and would deny her equal benefits of correctional and rehabilitative programs and services, including but not limited to safe housing, showers, and healthcare consistent with accepted medical standards. Accordingly, Section 4(a) violates Section 504 of the Rehabilitation Act of 1973.

95.     If Section 4(a) is implemented, Jane Jones will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT V

**Challenge to Section 4(c)**
**Rehabilitation Act of 1973, Section 504**
**Disability Discrimination**
**Against All Defendants in Their Official Capacities**

96.     Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

97.     Section 4(c) categorically bans medical treatments, regardless of medical need, if they are prescribed to "conform[] an inmate's appearance to that of the opposite sex"—meaning treatments are banned only if they are prescribed to treat gender dysphoria.

98.     Section 4(c) discriminates based on disability by excluding people with gender dysphoria, including Jane Jones, from accessing medically necessary healthcare services that are provided to all other people in BOP custody based on medical need. Accordingly, Section 4(c) violates Section 504 of the Rehabilitation Act of 1973.

99.     If Section 4(c) is implemented, Jane Jones will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT VI

**Challenge to Sections 4(a) and 4(c)**
**Administrative Procedure Act**
**Arbitrary and Capricious, Unlawful, and Unconstitutional Agency Action**
**Taken Without Observance of Procedure Required By Law**
**Against Defendant Lothrop in His Official Capacity**

100.    Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

101.    BOP's actions to implement Sections 2, 4(a), and 4(c) of the Executive Order constitute final agency action that has harmed Jane Jones, affected her legal rights, and subjected her to an imminent risk of further harm.

102.    BOP's transfer of Jane Jones to a men's facility and the imminent threat to deny her necessary medical care solely because of her birth sex are unconstitutional.

103.    BOP's transfer of Jane Jones to a men's facility solely because of her birth sex and transgender status is arbitrary and capricious.

104.    BOP's decision to deny Jane Jones medically necessary care to treat her gender dysphoria solely because of her birth sex and transgender status is arbitrary and capricious.

105.    BOP's transfer of Jane Jones to a men's facility solely because of her birth sex is contrary to law as set forth in 28 C.F.R. §§ 115.41–42.

106.    For BOP's first transfer and any future transfer of Jane Jones to a men's prison to be lawful, amendments to 28 C.F.R. §§ 115.41–42 would have to be made through notice-and-comment rulemaking. Section 4(a) directs the Attorney General to make such an "amendment," but no amendment has been made at this time. BOP's transfer of Jane Jones prior to a valid amendment to 28 C.F.R. §§ 115.41–42 was made without observance of procedure required by law.

107.    BOP's decision to transfer Jane Jones without conducting an individualized assessment of all relevant circumstances, including her safety, was made without observance of procedure required by law.

108.    If Sections 4(a) and 4(c) are implemented, Jane Jones will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief:

(1) Issue a judgment under 28 U.S.C. §§ 2201–02 declaring that Sections 4(a) and 4(c) of Executive Order 14166 violate Plaintiff's rights under the Fifth and Eighth Amendments to the United States Constitution, the Rehabilitation Act of 1973, and the Administrative Procedure Act for the reasons and on the Counts set forth above;

(2) Enter a permanent injunction prohibiting Defendants and their officers, employees, servants, agents, appointees, and successors from enforcing Sections 4(a) and 4(c) of Executive Order 14166, and requiring Defendants to maintain Plaintiff's housing and medical treatment consistent with the status quo before January 20, 2025;

(3) Award Plaintiff nominal damages, as well as her costs, expenses, and reasonable attorneys' fees pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 12205, and other applicable laws; and

(4) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,


/s/ Jennifer Fiorica Delgado

Jennifer Fiorica Delgado (Bar No. NY296)
Alexander Shalom (*pro hac vice* pending
and admission forthcoming)
Natalie Kraner (*pro hac vice* pending and
admission forthcoming)
Wayne Fang (*pro hac vice* pending)
Markiana J. Julceus (*pro hac vice* pending)
**Lowenstein Sandler LLP**
1251 Avenue of the Americas
New York, NY 10020
(862) 926-2029
jdelgado@lowenstein.com
ashalom@lowenstein.com
nkraner@lowenstein.com
wfang@lowenstein.com
mjulceus@lowenstein.com

Jennifer L. Levi (*pro hac vice* pending and
admission forthcoming)
Bennett Klein (*pro hac vice* forthcoming)
Sarah Austin (*pro hac vice* forthcoming)
**GLBTQ Legal Advocates & Defenders**
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
bklein@glad.org
jlevi@glad.org
saustin@glad.org

Christopher F. Stoll (*pro hac vice*
forthcoming)
Amy Whelan (*pro hac vice* forthcoming)
**National Center for Lesbian Rights** 870
Market Street, Suite 370
San Francisco, CA 94102
(415) 392-6257
cstoll@nclrights.org
awhelan@nclrights.org

25