UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**JANE JONES,**

                **Plaintiffs,**          Civil Action No. 1:25-401

v.

DONALD J. TRUMP, et al.,

                **Defendants.**

**DECLARATION OF RICK STOVER,
SENIOR DEPUTY ASSISTANT DIRECTOR
DESIGNATION AND SENTENCE COMPUTATION CENTER**

I, Rick Stover, declare and state as follows:

1. I am currently employed by the Federal Bureau of Prisons (Bureau). Since June 2024, I have served as the Senior Deputy Assistant Director of the Designation and Sentence Computation Center, within the Bureau's Correctional Programs Division.

2. Prior to becoming Senior Deputy Assistant Director of the Designation and Sentence Computation Center, I worked in positions of increasing responsibility within the Bureau, most recently as the Warden at the Federal Correctional Institution in Danbury, Connecticut.

3. I am familiar with the Bureau's general policies and practices on housing for inmates, including the rationales for those policies. As part of my official duties, I have access to records maintained in the ordinary course of business by the Bureau, including inmate medical and mental health records.

4. The information below is based upon personal knowledge and upon information and belief.

5.  As of February 20, 2025, there are 2,198 inmates housed in FBOP facilities and halfway houses that identify as the opposite biological sex. There are 1,488 biological male inmates who identify as female and 710 biological female inmates who identify as male. The FBOP currently has 22 biological male inmates living in female institutions. It has 1 biological female inmate living in a male institution.

6.  Plaintiff, Jane Jones, is a biological male inmate currently housed in a female facility at ███████████████████████████████████████████████ The FBOP has reevaluated this placement and determined that placement at the ███████████████ ███████████████████████████ is appropriate.

7.  In determining the most appropriate placement for Jane Jones, the FBOP took into consideration the inmates' assigned security level, disciplinary record, medical record, and psychology record. Additional medical consideration was given to plaintiff's placement because Jane Jones previously underwent surgery to conform Jones's appearance to that of the opposite sex and will have additional medical care needs beyond what most male inmates need.

8.  Based on these factors, the Bureau found that placement at ███████████████ ███████████████████████████ would safely house Jane Jones. ███████ ███████ is a low security facility that houses several biological male inmates who identify as the opposite sex and a large number of nonviolent offenders. Nonviolent crimes are defined as crimes involving property, drug, and other offenses which do not involve a threat of harm or an actual attack upon a victim. The most frequently identified nonviolent crimes involve drug trafficking, drug possession, burglary, and larceny. Moreover, inmates housed in low security facilities tend to have minor infractions in their disciplinary history with the Bureau.

9. Being housed at ▮▮▮▮▮▮ greatly reduces the chance of Jane Jones being victimized by other inmates. Jane Jones is currently housed at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The institution has a population size of approximately ▮ inmates. In 2024, ▮▮▮▮▮▮ had a total of ▮ guilty findings of assaults on inmates. ▮▮▮▮▮▮ has a population size of approximately ▮ total inmates. In 2024, ▮▮▮▮▮▮ had a total of ▮ guilty findings of assaults on inmates. Moreover, ▮▮▮▮▮▮ currently houses ▮ biological male inmates who identify as the opposite sex, thereby having staff members that are experienced with providing care to this special population.

10. ▮▮▮▮▮▮ was also selected because it has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Jones would be medically assessed and given a treatment plan consistent with Jones' medical needs.

11. The Bureau follows the requirements of the Prison Rape Elimination Act of 2003's (PREA) implementing regulations to ensure the safety of inmates. In deciding whether to assign an inmate to a facility for male or female inmates, the Bureau's policy is consistent with PREA standards, in that the Bureau considers on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems. ▮▮▮▮▮▮ is thus particularly well situated to deliver medically necessary health care to inmates in accordance with proven standards without compromising public safety concerns.

12. The FBOP recognizes the importance of protecting all inmates from sexually abusive behavior and ensure their continued safety. In fact, pursuant to FBOP Program Statement 5324.12, <u>Sexually Abusive Behavior Prevention and Intervention Program</u> (effective June 4, 2015), the FBOP implements zero tolerance toward all form of sexual activity in the custodial environment, including sexual abuse and sexual harassment. Routine training is provided to all FBOP staff to

help detect incidents, perpetrators, and inmate victims of sexually abusive behavior. FBOP staff are educated to intervene properly and in a timely manner. FBOP staff are required to document, report, and investigate reported incidents. Moreover, FBOP is responsible for disciplining and referring for prosecution perpetrators of sexually abusive behavior against other inmates.

13.     All institutional staff are trained to monitor and to intervene when they observe problematic interactions between inmates. At each FBOP institution, staff review a Posted Picture File (PPF) of inmates who are potentially disruptive, escape risks, or present a threat to staff or institutional security. The FBOP identifies inmates who, because of prior record, current offense, institutional adjustment, or other factors, pose a significant threat to inmate or staff safety, the institution's security, or the surrounding community's welfare. The PPF is updated at least quarterly. Institution staff review the PPF regularly for the purpose of determining inmates with a history of assaultive behavior or a history of sexual offenses, for the purpose of keeping the institution safe and secure.

14.     The FBOP conducts a Prison Rape Elimination Act (PREA) Intake screening upon an inmate's arrival to an institution, to ensure any potential for victimization or abusiveness. Consistent with PREA's implementing regulations, this screening includes the inmate's own perception of their safety and history of sexual assault, FBOP staff's assessment of the inmate's general physical appearance and presentation, and a review of the inmate's criminal history. FBOP staff must notify Correctional Services of the inmate's history of predation to ensure that the appropriate steps (investigation, documentation, CIMS concerns, etc.) have been taken. Moreover, if an inmate presents as a risk of victimization, staff will consider a referral to Psychology Services.

15.     Furthermore, if at any time, FBOP staff believe that an inmate's safety may be seriously jeopardized by placement in the general population, the inmate may be housed in more

restrictive conditions as a protective custody case in the Special Housing Unit. When an inmate is placed in administrative detention for placement, the Warden or designee (ordinarily to Captain), must review the placement within two workdays of the placement to determine if continued protective custody if necessary. This review includes documents that led to the inmate being placed in protective custody and any other documents pertinent to the inmate's protection.

16.     Inmates have numerous ways to report if they have been sexually assaulted or have been a victim of sexual harassment. An inmate can write directly to the Warden, Regional Director or Director. An inmate can send the Warden an Inmate Request to Staff Member (Cop-out) or a letter reporting the sexually abusive behavior. Moreover, an inmate may also send a letter to the Regional Director or Director of the Bureau of Prisons, and to ensure confidentiality, can use special mail procedures. Finally, an inmate can file a Request for Administrative Remedy (BP-9). If the inmate determines that the complaint is too sensitive to file with the Warden, the inmate has the opportunity to file the administrative remedy directly with the Regional Director (BP-10). The inmate can also email or write the Office of Inspector General (OIG) which investigates certain allegations of staff misconduct by employees of the U.S. Department of Justice. Moreover, anyone can report abuse on behalf of the inmate by using, https://www.bop.gov/inmates/custody_and_care/sexual_abuse_prevention.jsp. Finally, an inmate can send reports of sexual abuse to a dedicated email address managed by OIG, and the inmate can request the report remain confidential. OIG is completely independent of the FBOP. OIG protects the identity of victims and other individuals who report allegations to the greatest extent possible, while still thoroughly vetting and investigating the allegations.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: February 22, 2025

RICHARD STOVER
Digitally signed by RICHARD STOVER
Date: 2025.02.22 12:28:30 -06'00'

RICK STOVER