IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE JONES, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>PAMELA BONDI, in her official capacity as Attorney General of the United States, *et al.*,<br><br>　　　　　Defendants. | Civil Docket No. 1:25-cv-401 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**RESPONSE**

Defendants respectfully submit this response to Plaintiffs' motion for a temporary restraining order and preliminary injunction. Because the issues presented by Plaintiffs' motion largely overlap with issues addressed in the parties' prior briefing in this case and in *Doe v. Bondi*, No. 25-cv-286 (D.D.C.), the Court has authorized the parties to "incorporate by reference" arguments made in their prior briefs. Plaintiffs have done so in their motion, and Defendants likewise incorporate by reference here the arguments that they previously made in their TRO opposition in this case (ECF No. 24) and in *Doe* (ECF Nos. 11, 52). Defendants submit this response to make six additional points in response to Plaintiffs' new allegations and the Court's recent decisions.

*First*, Defendants are attaching herewith a supplemental Declaration of Rick Stover, which provides information about the new Plaintiffs, including the facilities in which they are currently housed and the facilities to which they could be transferred. *See* Ex. 1, Stover Decl. ¶¶ 7–12. Like the other men's facilities that BOP has determined would be appropriate to house Jane Jones and the *Doe* plaintiffs, each of these men's facilities is a low security facility that houses a number of nonviolent offenders. *Id.* ¶ 12.[1] Similarly, the rates of assault at these facilities are often lower than the rates of assault in the facilities where the new Plaintiffs are currently housed. *Id.* ¶¶ 13–15. And in the seven facilities to which the *Jones* and *Doe* plaintiffs may be transferred, there was only one guilty finding of sexual assault in 2024. *Id.* ¶ 16.

*Second*, the Court in its recent decision in *Doe* found that the *Doe* plaintiffs were likely to succeed on their Eighth Amendment claim in part because, in the Court's view, when BOP made the initial housing determination for the *Doe* plaintiffs,

---

[1] BOP has no current plans to transfer Plaintiff Amy Jones. *Id.* ¶ 10.

it determined that "a women's facility was the appropriate facility for each named plaintiff." Order, *Doe*, No. 25-cv-286 (D.D.C. Feb. 25, 2025), ECF No. 55 ("*Doe* Order"). As the attached declaration explains, however, BOP had placed the *Jones* and *Doe* plaintiffs in women's facilities for a variety of reasons, including because they had requested sex reassignment surgery (in which case then-existing BOP policy required the inmate to have been housed in a women's facility for at least one year) or had been housed with women before being committed to federal custody. Stover Decl. ¶ 24. It is not the case that those inmates were housed in women's facilities because BOP believed that they were particularly at risk or could not be safely housed in a men's facility. *Id.* As noted in prior briefing, BOP has determined that the *Jones* and *Doe* plaintiffs can safely be housed in low security men's facilities. *Id.*

Moreover, the Eighth Amendment does not require BOP, in deciding where to house an inmate, to focus exclusively on the safety of the individual inmate, to the exclusion of other legitimate penological considerations. *See, e.g.*, *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 446 (3d Cir. 2020) ("In evaluating the subjective prong of the Eighth Amendment test, we may also consider whether officials 'had a legitimate penological purpose' behind their conduct."). BOP is now placing greater weight on the privacy and safety interests of the inmates with whom plaintiffs are housed than it had done previously. The Constitution does not prohibit that change in the manner in which BOP balances the competing interests at stake.

*Third,* the Court in *Doe* also cited the plaintiffs' contention that "placement in a male penitentiary by itself" may exacerbate symptoms of gender dysphoria, which the Court stated "the Government fail[ed] to address." *Doe* Order at 3. But the Government addressed this issue directly. *See, e.g.*, TRO Opp. at 22, ECF No. 52 (noting that "Plaintiffs have offered no evidence supporting their allegation that placement in a male facility will itself exacerbate symptoms of gender dysphoria" and that Plaintiffs' expert's declaration "does not state that being housed in a women's

facility is medically necessary"). Moreover, Plaintiffs have argued that their symptoms of gender dysphoria may be exacerbated in part because they "may be forced to shower in full view of men who are incarcerated." Am. Compl. ¶ 7. As the attached declaration explains, however, "all of the men's facilities to which the plaintiffs could be transferred have individual shower stalls, so no inmate would be required to shower in full view of another inmate." Stover Decl. ¶ 26.

*Fourth*, the Court in *Doe* observed that there had been "no new developments" at that time "regarding the Medication Provisions, Sec. 4(c), of the Executive Order." *Doe* Order at 2. Since the *Doe* Order, however, BOP has issued a new memorandum regarding compliance with § 4(c). *See* Ex. 2. Consistent with that section, the memorandum provides that no BOP funds will be "expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." *Id.* The memorandum further provides that this policy "is to be implemented in a manner consistent with applicable law including the Eighth Amendment." *Id.*[2] Accordingly, Defendants continue to maintain that Plaintiffs' challenge to § 4(c) is unripe and unlikely to succeed, as Plaintiffs cannot show that they are likely to be denied any medically necessary care. *See, e.g.*, ECF No. 24 at 23–24, 30–32.

*Fifth*, Plaintiffs questioned the admissibility under the Federal Rules of Evidence of the first Stover declaration on lack of foundation and other grounds. *See* ECF No. 26 at 10 n.7. But "the Federal Rules of Evidence do not apply to preliminary injunction proceedings." *FTC v. CCC Holdings Inc.*, No. CV 08-2043, 2009 WL 10631282, at *1 (D.D.C. Jan. 30, 2009). In any event, the declaration attached hereto provides in detail the foundation for Mr. Stover's assertions. *See* Stover Decl. ¶¶ 17–

---

[2] Consistent with the Court's orders in this case and *Doe*, Defendants will not implement § 4(c) against Jane Jones or the *Doe* plaintiffs.

3

19. Defendants are also providing the business records on which Mr. Stover has relied. *See id.* Ex. A.

*Sixth*, Plaintiffs renew their request for a "facial" injunction, as opposed to an injunction tailored to the particular Plaintiffs. The Court has already (correctly) denied this request three times. *See* ECF No. 28 (enjoining implementation of Sections 4(a) and 4(c) of Executive Order 14168 "against Plaintiff Jane Jones"); Prelim. Inj., *Doe*, No. 25-cv-286 (Feb. 18, 2025), ECF. No. 44 (enjoining implementation only as to named plaintiffs);); *id. Doe* Order (same). The Prison Litigation Reform Act requires that all "prospective relief"—meaning all relief "other than compensatory monetary damages"—must "extend no further than necessary to correct the violation of the Federal right of a *particular plaintiff or plaintiffs*." 18 U.S.C. § 3626(a)(1), (g) (emphasis added). Preliminary injunctions specifically "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means to correct the harm." *Id.* § 3626(a)(2). The cases that Plaintiffs cite from outside the PLRA context are thus inapposite. *See* Pls.' Mem. at 11, ECF No. 37-1.[3]

Accordingly, for the foregoing reasons and the reasons explained in Defendants' prior briefing on these issues, Plaintiffs' motion for a temporary restraining order and preliminary injunction should be denied.

---

[3] In any event, a "facial" injunction is not necessary to "avoid the [purported] chaos and confusion that comes from a patchwork of injunctions." Pls.' Mem. at 11. This case and *Doe* are pending before this Court, and the only other case to address these issues—*Moe v. Trump* (originally filed in the District of Massachusetts)—will soon be transferred to this Court as well.

Dated: February 28, 2025    Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

JEAN LIN
Special Litigation Counsel

/s/ *John Robinson*
JOHN ROBINSON (Bar No. 1044072)
ELIZABETH B. LAYENDECKER
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 616-8489
john.j.robinson@usdoj.gov