

**Jennifer Fiorica Delgado**
Partner

1251 Avenue of the Americas
New York, New York 10020

T: (646) 414-6962
M: (732) 547-0934
E: jdelgado@lowenstein.com

March 1, 2025

**VIA ECF**

The Honorable Royce C. Lamberth, U.S.D.J.
U.S. District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

        RE:    <u>Jane Jones, *et al.* v. Pamela Bondi, *et al.*, Civil Action No. 25-cv-00401-RCL Plaintiffs' Reply to Defendants' Opposition to Motion for Temporary Restraining Order and Preliminary Injunction</u>

Judge Lamberth:

Defendants' opposition raises no new issues for the Court to consider in deciding whether to issue Plaintiffs' request for injunctive relief. Accordingly, Plaintiffs incorporate by reference here the arguments previously made in their Reply Briefs to Defendants' prior oppositions, both in this case (ECF No. 26) and in *Doe v. Bondi*, No. 1:25-cv-00286-RCL (ECF No. 54). Plaintiffs make three brief points in response to Defendants' arguments.

*First*, Defendants' claim that low-security men's facilities are "appropriate to house" the *Jones* and *Doe* Plaintiffs is belied by Individual Plaintiffs' actual experiences. ECF No. 42, at 1. Three of the four new *Jones* Plaintiffs have already suffered sexual violence and harassment in men's prisons—including low-security men's facilities. *See* ECF No. 37-3 (Decl. of Amy Jones ("Amy Jones Decl.")) ¶¶ 10–12, 14–16; ECF No. 37-5 (Decl. of Carla Jones ("Carla Jones Decl.")) ¶¶ 8, 13; ECF No. 37-6 (Decl. of Donna Jones ("Donna Jones Decl.")) ¶¶ 6, 10. These harms negate Defendants' argument because, as Plaintiffs have already demonstrated—and the Court agreed—there is a wide gap between a facility's general safety and its safety for transgender women. *Doe*, ECF No. 23, at 8–11; *Doe*, ECF No. 55, at 3 n.2; *Jones*, ECF No. 28 (applying "the

same reasoning" from its decisions *Doe*). Low-security men's facilities are therefore not only inappropriate, but patently unsafe, placements for Plaintiffs.

*Second*, the contention raised in the proffered declaration that low-security men's facilities are more suitable for transgender women because they would be housed with similarly situated individuals (*see* ECF No. 42-1 (Second Declaration of Rick Stover ("Second Stover Decl.")) ¶ 12) is wholly irrelevant given Defendants' policy, affirmed on February 28, 2025, that it will prohibit all transgender women from having medical care or treatment for their gender dysphoria (*see* ECF No. 42-2 (BOP Memorandum)). As this Court has already found, if transferred to a men's facility, Plaintiffs face a very high risk of physical violence and sexual assault. *Doe*, ECF No. 23 at 8–9 ("[P]lacement in a male penitentiary *by itself* will exacerbate the symptoms of their gender dysphoria, *even if* they are not subject to physical or sexual violence."). If denied continuation of their medically necessary hormone therapy, their gender dysphoria will worsen, with severe negative consequences for their physical and mental health. *See Doe*, ECF No. 13-6 (Declaration of Frederic M. Ettner ("Ettner Decl.")) ¶¶ 10, 13–17; *Doe*, ECF No. 54-1 (Declaration of Lauren Meade ("Meade Decl.")) ¶¶ 3–14).

*Third*, Defendants' claim that the *Jones* and *Doe* Plaintiffs were placed in women's facilities for reasons unrelated to their or other women's safety is demonstrably false. ECF No. 42, at 2 (citing ECF No. 42-1 ¶ 24). The BOP Memorandum says simply that the current policy is being implemented "[c]onsistent with Executive Order (EO) 14168." ECF No. 42-2. And the absence of any information in the record that there have been determinations of Plaintiffs' housing and medical treatments independent of the EO is telling. The BOP has never maintained a policy of transferring individuals to women's facilities solely because they were seeking sex reassignment surgery. ECF No. 42-1 ¶ 24. Instead, the BOP always assesses issues of safety and risk when

housing determinations are made. Moreover, in cases where certain individuals were placed in women's facilities pursuant to court orders, judges determined that the Constitution required such placements. (*Id.*).

*Finally*, and most importantly, this Court has recognized in both *Jones* and *Doe* that the only reason the BOP is now reconsidering Plaintiffs' housing is the challenged EO—not any legitimate safety concern or penological interest. *Doe*, ECF No. 23, at 10–11 ("the defendants have not so much as alleged that the plaintiffs in this particular suit present any threat to the female inmates housed with them"); ECF No. 55, at 2 ("the Government's filings . . . make clear that the *only* change in circumstances from when the initial housing determination was made to now is Executive Order 14168."); *Jones*, ECF No. 23 (applying its *Doe* reasoning). Nothing in Defendants' opposition changes this fact, and therefore, it should be summarily rejected.

## CONCLUSION

For the foregoing reasons, Plaintiffs seek the immediate requested relief.

Respectfully submitted,

Dated: March 1, 2025

/s/ Jennifer Fiorica Delgado

Jennifer Fiorica Delgado (Bar No. NY296)
Alexander Shalom (admission forthcoming)
Natalie Kraner (admission forthcoming)
Wayne Fang (*Pro hac vice*)
Markiana J. Julceus (*Pro hac vice*)
**Lowenstein Sandler LLP**
1251 Avenue of the Americas
New York, NY 10020
(862) 926-2029
jdelgado@lowenstein.com
ashalom@lowenstein.com

nkraner@lowenstein.com
wfang@lowenstein.com
mjulceus@lowenstein.com

Jennifer L. Levi (admission forthcoming)
Sarah Austin (*Pro hac vice*)
**GLBTQ Legal Advocates & Defenders**
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
bklein@glad.org
jlevi@glad.org
saustin@glad.org

Christopher F. Stoll (admission forthcoming)
Amy Whelan (admission forthcoming)
**National Center for Lesbian Rights**
1401 21st Street #11548
Sacramento, CA 95811
(415) 392-6257
cstoll@nclrights.org
awhelan@nclrights.org

4