UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANE JONES, *et al.*,

    *Plaintiffs*,

v.

PAMELA BONDI, in her official capacity as Attorney General of the United States, *et al.*,

    *Defendants*.

Case No. 1:25-cv-401-RCL

## ORDER

On February 28, 2025, Plaintiffs filed an Amended Complaint [ECF No. 35] adding four new plaintiffs to this action. Am. Compl. ¶¶ 8, 11, 14, 17. The new plaintiffs are all male-to-female transgender women in the custody of the Bureau of Prisons ("BOP"), housed in women's facilities but "facing immediate transfers to men's facilities" and "imminent risk of losing access to the medical care they each need to treat their gender dysphoria" as a result of the implementation of Executive Order 14168. *Id.* ¶ 20. On the same day Plaintiffs filed their Amended Complaint, Plaintiffs also filed a Motion for a Temporary Restraining Order and Preliminary Injunction [ECF No. 37] ("TRO/PI Mot.") to prevent the Government from implementing Executive Order 14168 as to the newly added plaintiffs. On March 1, the Government filed an Opposition [ECF No. 42] ("Opp'n"), and Plaintiffs filed a Reply [ECF No. 44].

The Court has reviewed the parties' filings and determines that the same reasoning from the Court's TRO Order in the related case, *Doe v. McHenry*, applies here. *See Doe v. McHenry*, No. 25-cv-286-RCL, 2025 WL 388218 (D.D.C. Feb. 4, 2025). The Court will only address the new arguments raised by the parties as applied to these newly added plaintiffs.

1

In the Court's most recent Order in *Doe*, in which the Court granted the plaintiffs' renewed Motion for TRO and Preliminary Injunction, the Court observed that when making housing determinations for each of the named plaintiffs, "the BOP determined that considering all statutorily and constitutionally required factors, a women's facility was the appropriate facility for each named plaintiff." *See* Order of February 24, 2025, *Doe v. Bondi*,[1] No. 25-cv-286 (RCL), ECF No. 55. And "the *only* change in circumstances" to justify the imminent transfer of each Plaintiff to a men's facility was Executive Order 14168—nothing about the plaintiffs' individual situations. *Id.*

The Government, in trying to justify the immediate transfer of Plaintiffs to men's facilities, states that any pre-Executive Order decision to place each Plaintiff in a women's facility was made for a "variety of reasons," and not simply because of a finding that the plaintiffs could not be safely housed in a men's facility. Opp'n at 2; *see* Decl. of Rick Stover, Senior Deputy Assistant Director, Designation and Sentence Computation Center, ECF No. 53-2 ("Stover Decl.") ¶ 24 (listing reasons why some transgender inmates were housed in women's facilities beyond just safety concerns, including because some inmates were seeking sex reassignment surgery, or because of a court order, or because "they were already being housed with women prior to coming into the FBOP's custody"). That may be true—but it actually underscores this Court's original reasoning. Before the Executive Order, the BOP determined that women's facilities are the *appropriate* facilities for Plaintiffs under the prevailing legal regime "considering all statutorily and constitutionally required factors." Order of February 24, 2025 at 2, *Doe v. Bondi*, No. 25-cv-286 (RCL). The BOP took account of court orders, settlement agreements, medical and psychological

---

[1] Under Fed. R. Civ. P. 25(d), Attorney General Pamela Bondi was "automatically substituted as a party" as the successor for Acting Attorney General James R. McHenry III in the *Doe* case.

records, and other applicable circumstances to place Plaintiffs in women's facilities, despite the fact that "housing inmates with inmates of the opposite biological sex is a statistical anomaly."[2] Stover Decl. ¶¶ 22, 24. Indeed, the named Plaintiffs here were housed in men's facilities early in their incarceration, during which period they experienced numerous unspeakable harms including multiple rapes, suicide attempts, and severe psychological distress. TRO/PI Mot. at 3–6. And now, the sole reason behind summarily removing Plaintiffs from their appropriate housing assignment is the implementation of the Transfer Provision, Section 4(a), of Executive Order 14168.

The standard that Plaintiffs must meet the preliminary injunction stage is a likelihood of success on the merits on an Eighth Amendment theory of "deliberate indifference" or "failure-to-protect." *See Doe v. McHenry*, 2025 WL 388218, at *4 (citing *Johnson v. California*, 543 U.S. 499, 511 (2005)). The Court once again concludes—as it has for each of the named plaintiffs in this action and in *Doe*—that implementation of the Transfer Provision, resulting in blanket removal of the plaintiffs from their appropriate housing placement with no discretion to place them in any women's facility, suggests such a likelihood of success on the merits.[3]

The Court also reiterates that at the preliminary relief stage of litigation, the Court must consider the balance of equities and the public interest. These factors favor Plaintiffs: the

---

[2] Taking it as true that some male-to-female transgender inmates were housed in women's facilities "due to court orders" or "as part of the terms of a settlement agreement," then it appears that the Transfer Provision is in direct conflict with these existing orders. The Government also does not tie these proposed reasons to the individual Plaintiffs in this case—in fact, the Government names two individuals, Zoe and Mary Doe, who are not plaintiffs in this case. Stover Decl. ¶ 24.

[3] The Government states that it "has no current plans to transfer Plaintiff Amy Jones." Opp'n at 1. The Court faced this posture before in the initial TRO Order in *Doe* and concluded that, even considering the fact that BOP had not yet determined where the plaintiffs would be transferred, "[t]he plain text of the Executive Order affords the BOP no discretion to keep the plaintiffs in a female penitentiary." *See Doe,* 2025 WL 388218, at *5. The Court "is therefore satisfied that [Amy Jones's] Eighth Amendment claims are sufficiently 'fit . . . for judicial decision' at this time." *Id.* (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)).

Government "ha[s] not so much as alleged that the plaintiffs in this particular suit present any threat to the female inmates housed with them, or that this threat cannot be managed locally by prison staff.  Thus, the public interest in seeing the plaintiffs relocated *immediately* to male facilities is slight at best." *Id*. at *5.  Therefore, a preliminary injunction to stop the implementation of the Transfer Provision as to the Plaintiffs is the appropriate relief.

The Government also continues to argue that Plaintiffs' challenges to the Medication Provision, Section 4(c), of Executive Order 14168 are "unripe and unlikely to succeed" because "Plaintiffs cannot show that they are likely to be denied any medically necessary care." Opp'n at 3.  The Government highlights a new BOP memorandum, released on February 28, 2025, which states that compliance with the Executive Order "is to be implemented in a manner consistent with applicable law including the Eighth Amendment." *Id.*  But as the Court observed in its original TRO Order in *Doe*, "the plain text of the Executive Order affords the BOP no discretion . . . to continue providing hormonal therapy to help [Plaintiffs] conform physically to their non-birth sex."  *See Doe*, 2025 WL 388218, at *5.  If anything, the BOP memorandum seems to suggest that termination of hormonal therapy is imminent, stating that "no Bureau of Prisons funds are to be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." Ex. 2 to Opp'n, ECF No. 42-2.  The Court therefore concludes again here that Plaintiffs' challenges to the Medication Provision are ripe and likely to succeed on Eighth Amendment grounds.

In sum, in consideration of Plaintiffs' Motion [ECF No. 37] for a Temporary Restraining Order and Preliminary Injunction, the Opposition [ECF No. 42] thereto, the Reply [ECF No. 44], and the entire record herein, it is hereby

**ORDERED** that the plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction is **GRANTED**; and it is further

**ORDERED** that the Defendants are hereby enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against Plaintiffs Amy, Barbara, Carla, and Donna Jones, pending further Order of this Court; and it is further

**ORDERED** that, pending further Order of this Court, Defendants shall maintain and continue the plaintiffs' housing status and medical care as they existed immediately prior to January 20, 2025.

Date: March 3, 2025
4:15 pm

Royce C. Lamberth
United States District Judge