UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE JONES, et al.,<br><br>          Plaintiffs,<br><br>v.<br><br>PAMELA J. BONDI, *in her official capacity as* Attorney General of the United States, *et al.*,<br><br>          Defendants. | Case No.: 1:25-cv-00401-RCL |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR A NEW PRELIMINARY INJUNCTION**

**INTRODUCTION**

This Court issued a preliminary injunction on August 20, 2025, that will soon expire on November 21, 2025. ECF No. 75. The facts that support preliminary injunctive relief for Plaintiffs Jane, Amy, Barbara, Carla, and Donna Jones remain unchanged. Plaintiffs respectfully request that the Court issue a new preliminary injunction for an additional ninety (90) days to protect them from the serious harms that would arise if Sections 4(a) and 4(c) of Executive Order 14168 ("Executive Order" or "EO") are applied to them.

On August 20, 2025, the Court issued for the second time a new preliminary injunction for ninety days that maintained the *status quo ante* for Plaintiffs' housing in women's facilities and access to medical care as it existed immediately prior to January 20, 2025. *Id.* At that time: the injunction then in place was soon to expire, Defendants did not oppose injunctive relief for another ninety days, and the Court was not aware of any "newly discovered factual circumstances that necessitate a reassessment of the Court's prior

holding that the plaintiffs have met their burden for preliminary injunctive relief or a reevaluation of the terms of that relief." *Id.* at 1. The parties are at the same juncture again. The Court's August 20, 2025, preliminary injunction will expire on November 21, 2025. *Id.*; *see also* 18 U.S.C. § 3626(a)(2). Defendants do not oppose Plaintiffs' motion for a new ninety-day preliminary injunction. Declaration of Alexander Shalom, Esq. ("Shalom Decl."), Ex. A. And the facts that have supported preliminary injunctive relief since this case was first filed remain unchanged. Absent an injunction, Plaintiffs remain at a substantial risk of serious harm because the Executive Order requires the Bureau of Prisons ("BOP") to transfer them to men's facilities. A new injunction is also necessary to ensure Plaintiffs' continued access to medically necessary care for gender dysphoria. Accordingly, Plaintiffs respectfully make this unopposed request that the Court enter a new preliminary injunction for a ninety-day period from November 21, 2025, through February 19, 2026.

I.  STATEMENT OF FACTS

Plaintiffs have previously detailed the facts giving rise to their claims in their previously-filed declarations and motions in support of preliminary injunctive relief.[1] Plaintiffs incorporate those prior statements of facts in addition to the summary here. Plaintiffs have resided in women's facilities for several years pursuant to individualized

---

[1] *See* Memorandum of Law in Support of Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 21-1 at 2–6; Letter Brief in Support of Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 37-1 at 2–7; Memorandum of Points and Authorities in Support of Unopposed Motion for Renewed Preliminary Injunction, ECF No. 68-1 at 2.

2

determinations made by the BOP. And Plaintiffs have all been diagnosed with gender dysphoria, a serious but treatable medical condition, for which they have received ongoing treatment from the BOP. Plaintiffs all face a substantial risk of serious harm from the Executive Order's mandate that BOP transfer them to men's prisons and terminate their medical treatments for gender dysphoria. *See* Declaration of Lauren Meade ("Meade Decl."), ECF No. 21-4 ¶¶ 2, 4–9; Supplemental Declaration of Lauren Meade ("Meade Supp. Decl."), ECF No. 33-1 ¶¶ 3–11; Declaration of Jane Jones ("Jane Decl."), ECF No. 6 ¶¶ 20–28; Declaration of Amy Jones ("Amy Decl."), ECF No. 37-3 ¶¶ 10–23; Declaration of Barbara Jones ("Barbara Decl."), ECF No. 37-4 ¶¶ 7–18; Declaration of Carla Jones ("Carla Decl."), ECF No. 37-5 ¶¶ 3–14; Declaration of Donna Jones ("Donna Decl."), ECF No. 37-6 ¶¶ 6–18.

Since Plaintiffs initiated this lawsuit, Defendants have continued to defend the discriminatory and dangerous housing and medical policies laid out in the Executive Order and in BOP's implementing memoranda, and they have appealed this Court's Orders enjoining the application of the housing (but not medical care) policy to Plaintiffs. *See* ECF Nos. 61, 70, 77; ECF No. 65 at 2 ("Defendants' appeal will focus only on whether transferring Plaintiff to a men's facility is illegal."). A new preliminary injunction is necessary to ensure that Defendants do not transfer Plaintiffs to male facilities—where they face a substantial risk of sexual assault, physical violence, exacerbated gender dysphoria, and mental health decompensation—and to ensure Plaintiffs' continued access to medically necessary treatment for gender dysphoria.

On August 20, 2025, the Court issued a preliminary injunction in the related case

*Kingdom v. Trump*, a certified class action challenging the Executive Order's ban on medical treatment for gender dysphoria and BOP's policies implementing the ban. *See* Order Granting Plaintiffs' Motion for Renewed Preliminary Injunction, *Kingdom v. Trump*, 1:25-cv-00691-RCL, ECF No. 79 (Aug. 20, 2025). That injunction does not obviate Plaintiffs' need for relief here. The *Kingdom* injunction deals exclusively with medical care under Section 4(c) of the EO. *Id.* at 2 (requiring BOP to "restore and maintain access to those treatment modalities for those who previously received them pursuant to a prescription rendered by BOP staff."). It does not address the housing and transfer policies at issue in this litigation. As to medical care, while Plaintiffs are members of the class covered by the *Kingdom* injunction, record evidence in that case indicates a pattern of noncompliance at BOP facilities, Declaration of Corene T. Kendrick In Support of Plaintiffs' Motion for Renewed Preliminary Injunction, *Kingdom v. Trump*, 1:25-cv-00691-RCL, ECF No. 78-2 at 8–9 (August 8, 2025), and Plaintiffs have no independent ability to enforce the *Kingdom* injunction. Moreover, as of the date of this motion, the injunction in *Kingdom* will soon expire and a new one has not yet been issued. Finally, because the basis for the relief ordered in *Kingdom* is the Administrative Procedure Act, it does not address Plaintiffs' constitutional entitlement to medically necessary care. For all of these reasons, Plaintiffs have an ongoing need for preliminary injunctive relief.

## II.    PROCEDURAL HISTORY

On February 10, 2025, Plaintiff Jane Jones initiated this action seeking injunctive relief to prohibit Defendants from implementing Sections 4(a) and 4(c) of Executive Order 14168, which mandates Plaintiff's transfer and the termination of all medical care related

to her gender dysphoria. On February 24, 2025, this Court issued a temporary restraining order and preliminary injunction requiring Defendants to "maintain and continue [Plaintiff Jane Jones'] housing status and medical care as they existed immediately prior to January 20, 2025." ECF No. 28 at 2.

Following the February 24, 2025 Order, Defendants resumed their attempt to transfer individuals not covered by that Order. Thus, on February 28, 2025, Plaintiffs filed their Amended Complaint to add Amy Jones, Barbara Jones, Carla Jones, and Donna Jones as additional plaintiffs seeking injunctive relief. ECF No. 35. The Court issued a new preliminary injunction on March 3, 2025, which covered those four Plaintiffs. ECF No. 46.

On April 2, 2025, Defendants filed a notice of appeal of the Court's order issuing injunctive relief, focusing "only on whether transferring Plaintiff to a men's facility is illegal." ECF No. 61; ECF No. 65 at 2. On April 30, 2025, Defendants moved to stay further proceedings in the District Court until August 30, 2025, except with regard "to any motions to extend or renew the preliminary injunction," as well as "any issue that may arise from compliance with the preliminary injunction, the entry of any protective order, any motions to amend the complaint to add new plaintiffs and for preliminary injunctive relief regarding those plaintiffs, and other case management issues," while agreeing that "either side may move to lift the stay at any time." ECF No. 65 at 4. The Court granted the motion. ECF No. 67. Defendants' appeal was argued before the Court of Appeals for the District of Columbia on September 5, 2025. The Court's decision is currently pending. Defendants have represented that they will move to continue the stay. *See* Shalom Decl., Ex. A.

5

On May 16, 2025, Plaintiffs moved for a new preliminary injunction, which Defendants did not oppose. *See* ECF No. 68-1. On May 22, 2025, the Court issued a new preliminary injunction for an additional ninety days until August 23, 2025. *See* ECF No. 69. Specifically, the Court explained that it was not "aware of any newly discovered factual circumstances that would necessitate a reassessment of the Court's prior holding that the plaintiff has met her burden for preliminary injunctive relief or a reevaluation of the terms of that relief." *Id.* at 1.

Plaintiffs filed another unopposed motion for a new preliminary injunction on August 18, 2025, because the injunction then in place was soon to expire. *See* ECF No. 73. On August 20, 2025, the Court granted Plaintiffs' motion and issued a preliminary injunction for the period of August 23, 2025 through November 21, 2025. *See* ECF No. 75. Defendants were "enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against any plaintiff in this action." *Id.* at 1. The Court further ordered Defendants to "maintain and continue plaintiffs Jane Jones, Amy Jones, Barbara Jones, Carla Jones, and Donna Jones' housing status in women's facilities" and to "continue to provide their gender dysphoria treatment as it existed immediately prior to January 20, 2025." *Id.* at 1–2.

### III.   LEGAL STANDARD

An injunction issued in a lawsuit covered by the Prison Litigation Reform Act ("PLRA") automatically expires after ninety days unless the court "render[s] it permanent" by "ma[king] specific findings that the restraint is narrowly drawn, extends no further than necessary to correct the violation of [the] federal right, and is the least intrusive means

necessary to correct that violation." *Banks v. Booth*, 3 F.4th 445, 448 (D.C. Cir. 2021); *see also* 18 U.S.C. §§ 3626(a)(1)(A), 3626(a)(2). Alternatively, and as all parties agree, upon a showing by Plaintiffs that preliminary relief remains necessary, the Court can issue a new preliminary injunction. *See* Supplemental Brief for Appellants, *Doe v. Bondi*, Nos. 25-5099, 25-5101, 25-5208, at 6–13 (D.C. Cir. Sept. 24, 2025). "Nothing in the statute limits the number of times a court may enter preliminary relief." *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001); *see also Monroe v. Bowman*, 122 F.4th 688, 697 (7th Cir. 2024); *Smith v. Edwards*, 88 F.4th 1119, 1125 (5th Cir. 2023); *Alloway v. Hodge*, 72 F. App'x 812, 817 (10th Cir. 2003). The new injunction can be identical to the prior one, so long as the court makes the "needs-narrowness-intrusiveness" findings anew. *See Mayweathers*, 258 F.3d at 935–36.

This Court can thus preserve the *status quo ante* by issuing a new injunction and finding that the relief is "narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

*Winter* provides the familiar substantive standard. To obtain a preliminary injunction, Plaintiffs must show that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because the government is the defendant, the harm to the opposing party and public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### IV.     ARGUMENT

This Court has already concluded that Plaintiffs have met their burden for preliminary injunctive relief. ECF No. 28 (adopting the Courts' reasonings in the related cases of *Doe v. Bondi*, 1:25-cv-286-RCL, and *Jones v. Bondi*, 1:25-cv-401-RCL); ECF No. 46 at 3 ("The Court once again concludes—as it has for each of the named plaintiffs in this action and in *Doe*—that implementation of [Section 4(a)], resulting in blanket removal of the plaintiffs from their appropriate housing placement with no discretion to place them in any women's facility, suggests . . . a likelihood of success on the merits [of their Eighth Amendment claims]."); *see also* ECF No. 69 at 2 (issuing a new preliminary injunction because it "prevents the implementation of only those sections of the [Executive] Order for which the plaintiffs have demonstrated a likelihood of success on the merits and immediate, irreparable harm if a preliminary injunction is not entered"); ECF No. 75 (same). Plaintiffs incorporate by reference the arguments made in their prior motions. *See* ECF No. 21-1 at 7–25; ECF No. 26 at 3–24; ECF No. 37-1 at 7–12; ECF No. 44; ECF No. 68-1 at 5–9.

Because there have been no material changes in the facts underlying this case, and because Plaintiffs continue to face the same irreparable harms, this Court should issue a new preliminary injunction. Plaintiffs have shown that they are likely to succeed on the merits of their claims; that they will face irreparable harm in the absence of continued injunctive relief; and that the public interest and balance of equities weigh in favor of granting preliminary injunctive relief. That continues to hold true for the period that has elapsed since the Court issued the most recent preliminary injunction on August 20, 2025. For the reasons stated here and in Plaintiffs' prior motions, Sections 4(a) and 4(c) of

Executive Order 14168 and Defendants' implementation of it violate the Eighth Amendment, the Fifth Amendment's Due Process Guarantee, and the Administrative Procedure Act ("APA").[2]

    **A.**     **Plaintiffs Continue To Show a Likelihood of Success on the Merits of Their Claims.**

        **1.**     **Eighth Amendment Claim**

Plaintiffs have previously shown that they are likely to succeed on the merits of their Eighth Amendment claim. *See* ECF No. 21-1 at 14–17; ECF No. 26 at 8–15; ECF No. 37 at 7–8; ECF No. 44; ECF No. 68-1 at 6–7. The Executive Order's categorical requirement that Plaintiffs be transferred to men's facilities—despite preexisting individualized determinations from BOP that Plaintiffs should be housed in women's facilities—constitutes a failure to protect Plaintiffs from a substantial risk of serious harm and deliberate indifference to those risks if transferred to men's facilities. *See Farmer v. Brennan*, 511 U.S. 825, 839–40, 846 (1994). As this Court observed, "the same reasoning from the Court's TRO Order in the related case, *Doe*[] applies here," ECF No. 46 at 1, finding that Defendants have "[s]ummarily remov[ed] the possibility of housing the plaintiffs in a women's facility, when that was determined to be the appropriate facility under the existing constitutional and statutory regime," *Doe* ECF No. 55 at 3.

The Court's prior findings regarding Plaintiffs' challenge to Section 4(a) of the Executive Order continue to this day, as every Plaintiff has shown that she would face a

---

[2] Plaintiffs maintain additional claims as well, but do not restate them here for purposes of seeking preliminary injunctive relief.

9

substantial risk of serious harm if transferred to a men's facility due to her particular medical and social history, prior experiences in BOP custody, status as a transgender woman who would be stigmatized and targeted for being transferred from a women's to men's facility, and the effects that living in a men's facility would have on her gender dysphoria.

As detailed in their declarations, nearly all Plaintiffs who were previously housed in men's facilities were sexually assaulted when they were there, which ultimately resulted in their transfers to women's prisons to ensure their safety. Donna Jones was raped in a shower at a men's facility. Donna Decl., ECF No. 37-6 ¶¶ 6, 10. After BOP staff in a men's facility exposed Amy Jones as transgender, Amy was violently and sexually attacked by three men in the facility; she was then transferred to two other men's facilities where she continued to be threatened, sexually harassed, and assaulted, resulting in her attempted suicide. Amy Decl., ECF No. 37-3 ¶¶ 8, 10, 12, 15–16. Carla Jones was sexually assaulted in three separate men's facilities. Carla Decl., ECF No. 37-5 ¶¶ 8, 13. Some of these assaults occurred in low-security men's facilities, and the BOP is aware of some of these incidents. ███████████████████████████████████████████████
███████

In addition, due to their housing in men's prisons, multiple Plaintiffs experienced depression, suicidal ideation or engaged in suicide attempts or self-harm, including self-mutilation. *See, e.g.*, Barbara Decl., ECF No. 37-4 ¶¶ 7–9; Amy Decl. ECF No. 37-3 ¶ 15; Carla Decl., ECF No. 37-5 ¶¶ 3–5.

Prior to the issuance of the Executive Order, Plaintiff Jane Jones—who has

10

undergone surgical procedures as part of her medical care for gender dysphoria—has only ever been housed with women in BOP custody. Jane Decl., ECF No. 21-3 ¶¶ 5, 8–13. After the Executive Order was issued, Jane was transferred from a minimum-security women's facility to a medium-security men's facility. *Id*. ¶¶ 9, 14. Officials held her in the Segregated Housing Unit ("SHU") at the men's facility for four days in solitary confinement. *Id.* ¶ 16. She was made to wear male undergarments, held in a small cell with no outside or recreational time, permitted extremely limited communication with family members, told by BOP that her supply of female hormone medication would not be renewed, and subjected to 24-hour surveillance by male guards, including while using the restroom. *Id*. ¶¶ 15–17. She was provided with a towel no bigger than a letter-sized piece of paper and declined showers because they would have exposed her to male corrections officers. *Id.* ¶ 17.

All the Plaintiffs fear sexual assault and extreme violence, deteriorating mental health, and/or worsening gender dysphoria if transferred to men's facilities. *See* Jane Decl., ECF No. 21-3 ¶¶ 26–27 ("I will be an easy target for harassment, abuse, and violence, including sexual assault, if I am transferred to a men's prison. A woman with full female anatomy has no place in a men's facility"); Amy Decl., ECF No. 37-3 ¶ 23 (feels "hopeless" and "fear[s] being the target of sexual violence again"); Barbara Decl., ECF No. 37-4 ¶ 18 (explaining she is "terrified at what could happen" in a male prison); Carla Decl., ECF No. 37-5 ¶ 13 ("I am not safe in [men's] facilities and I fear that I will be targeted again for sexual and physical violence. One of my sexual assaults happened at a low security facility"); Donna Decl., ECF No. 37-6 ¶¶ 16–18 (fearing she will want to self-harm again

11

if forced to transfer to a men's facility and lose access to her hormone medication).

Indeed, Plaintiffs were all placed in women's facilities based on BOP's careful evaluation of the PREA regulatory factors designed to protect vulnerable prisoners from violence, which includes "previously experienced sexual victimization" and the individual's "own perception of vulnerability." 28 C.F.R. § 115.41(d)(8)–(9). Moreover, the BOP has reaffirmed the necessity of Plaintiffs' placement in women's facilities, as they were housed exclusively in women's facilities for periods ranging from ███████ ███████ prior to the issuance of the Executive Order. ██████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

Similarly, the Executive Order's categorical requirement that BOP terminate medical treatment for Plaintiffs' gender dysphoria—treatment BOP has administered to Plaintiffs for years—amounts to a failure to protect and deliberate indifference. The Court has already made this determination several times. *See* ECF Nos. 28, 46, 69, 75. Every Plaintiff receives ongoing hormone medication to treat their gender dysphoria. *See* Jane Decl., ECF No. 21-3 ¶¶ 4–6, 27; Amy Decl., ECF No. 37-3 ¶¶ 11, 15, 23; Barbara Decl., ECF No. 37-4 ¶¶ 8, 11, 18; Carla Decl., ECF No. 37-5 ¶¶ 2–4, 7, 14; Donna Decl., ECF No. 37-6 ¶¶ 8–10, 17–18. Jane Jones has also undergone surgical procedures, including facial reconstruction, breast augmentation, and a vaginoplasty to treat her gender dysphoria. *See* Jane Decl., ECF No. 6 ¶¶ 4–6, 27. If their hormone medications are cut off, as Plaintiffs have detailed, they will each face a serious risk of substantial physical

harms, ranging from severe medical complications from an absence of circulating endogenous hormones, to mental health decompensation, suicidality, and severely exacerbated gender dysphoria. *See* Meade Decl., ECF No. 21-4 ¶¶ 2, 6–7; Meade Supp. Decl., ECF No. 33-1 ¶¶ 6–9.

Because the facts supporting Plaintiffs' need for preliminary injunctive relief have not changed, and Defendants do not oppose Plaintiffs' request for a new preliminary injunction, the Court should reach the same conclusion again.

### 2. APA Claim

As the Court has recognized, Plaintiffs' Eighth Amendment claims are sufficient to sustain a preliminary injunction preventing Defendants' implementation of Sections 4(a) and 4(c) of the Executive Order with regard to Plaintiffs. *See Doe* ECF No. 55 at 3. For the reasons set forth in Plaintiffs' prior motions, Defendants' implementation of the Executive Order also violates the APA. *See* ECF No. 21-1 at 18–20; ECF No. 26 at 4–5; ECF No. 68-1 at 7. As Plaintiffs have argued, BOP's blanket policy, mandated by the Executive Order, of transferring transgender women to men's facilities runs contrary to PREA regulations, effectively rescinds those regulations without following necessary procedures, and is arbitrary and capricious, unconstitutional, and not in accordance with law. *See* ECF No. 21-1 at 18–20. Similarly, BOP's blanket policy, mandated by the Executive Order, of denying medically necessary healthcare to transgender people, is arbitrary and capricious, unconstitutional, and not in accordance with law. *Id.* Plaintiffs incorporate these arguments from prior motions by reference.

13

### 3. Equal Protection Claim

Defendants' actions also violate Plaintiffs' rights under the Equal Protection clause. Plaintiffs incorporate by reference the arguments in favor of their Equal Protection claim from their prior motions explaining that Defendants' implementation of the Executive Order is subject to heightened scrutiny, and, so scrutinized, fails to pass constitutional muster. *See* ECF No. 21-1 at 7–14; ECF No. 26 at 15–22; ECF No. 37 at 8. As set forth in Plaintiffs' prior briefings, the Executive Order is based on animus and would fail even rational basis review. *See* ECF No. 21-1 at 13–14; ECF No. 26 at 21–22.

### B. Plaintiffs Continue to Face Irreparable Harm Without an Injunction.

This Court has previously found that Plaintiffs would suffer irreparable harm without an order preventing Defendants from enforcing Sections 4(a) and 4(c). *See* ECF Nos. 28, 46, 69, 75. Without a new injunction, Plaintiffs will be transferred imminently to male facilities, where they will face an extremely high risk of sexual assault, physical violence, exacerbated gender dysphoria, and mental health decompensation. *See*, *e.g.*, *Greene v. Bowles*, 361 F.3d 290, 292 (6th Cir. 2004) (describing severe physical attack against a transgender woman by another prisoner); *Tay v. Dennison*, 457 F. Supp. 3d 657, 664–68 (S.D. Ill. 2020) (describing severe sexual misconduct against a transgender woman by prison staff and physical attack by a male prisoner).

Injunctive relief is also necessary to ensure BOP's provision of constitutionally required and medically necessary hormone medication and other care for gender dysphoria. The denial of critical treatment for gender dysphoria would result in serious medical complications and physical changes, would worsen Plaintiffs' symptoms of gender

14

dysphoria, and would likely lead to serious and potentially life-threatening consequences, such as heightened risk of suicidality. *See* Meade Decl., ECF No. 21-4 ¶¶ 2, 7; Meade Supp. Decl., ECF No. 33-1 ¶¶ 7–8; Amy Decl., ECF No. 38-1 ¶¶ 15, 23; Barbara Decl., ECF No. 40-1 ¶¶ 7, 9, 18; Carla Decl., ECF No. 40-2 ¶¶ 4–5, 13–14; Donna Decl., ECF No. 40-3 ¶¶ 11–18. Moreover, as the Court has recognized, "placement in a male penitentiary *by itself* will exacerbate the symptoms of [Plaintiffs'] gender dysphoria, *even if* they are not subject to physical or sexual violence in their new facility—whether because they will be subject to searches by male correctional officers, made to shower in the company of men, referred to as men, forced to dress as men, or simply because the mere homogenous presence of men will cause uncomfortable dissonance." *Doe* ECF No. 55 at 3 n.2. (quoting *Doe* ECF No. 23).

      **C.**    **The Balance of Equities and the Public Interest Weigh in Favor of New Injunctive Relief.**

The balance of equities and public interest factors strongly favor a new injunction. This Court has already

> considered any adverse impact on public safety or on the operation of the criminal justice system caused by this relief and has given substantial weight to such impacts. After this consideration, the Court has concluded and so finds that no adverse impacts on the public safety or the operation of the criminal justice system will result from maintaining the status quo of the plaintiffs' medical care and housing status while this litigation proceeds.

ECF No. 69 at 2–3 (internal citation omitted).

Further, as this Court found in *Doe*, "the public interest in seeing the plaintiff[] relocated *immediately* to male facilities is slight at best." *Doe* ECF No. 23 at 11. And

continuing to provide medically necessary care to Plaintiffs would not unduly burden the government or harm the public. On the other side of the scale are Plaintiffs' weighty interests in protection from bodily harm, interests that are "not abstract at all." *Id.* The Court's prior determinations are equally true today.

### D. The New Injunction Meets the PLRA's requirements.

The requested injunction is narrowly drawn and extends no further than necessary to correct and prevent the harm to Plaintiffs that would result from implementation of the Executive Order. 18 U.S.C. § 3626(a)(2). It prohibits Defendants from applying only the challenged sections of the Executive Order and BOP's implementing memoranda, and it prohibits Defendants from doing so only as to Plaintiffs. It is also the least intrusive means necessary to correct this harm. BOP has no discretion under the Executive Order to maintain Plaintiffs' housing in women's facilities, nor to continue Plaintiffs' necessary medical care. Thus, enjoining Defendants is the least intrusive action the Court could take that will ensure Plaintiffs are not deprived of their rights. Finally, the issuance of a new preliminary injunction for ninety days will have no adverse impact on public safety or the operation of the criminal justice system because the order will simply maintain the status of Plaintiffs' medical care and housing while the litigation proceeds.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue a new preliminary injunction for an additional ninety (90) days, from November 21, 2025, through February 19, 2026.

Respectfully submitted,

Dated: November 13, 2025

/s/ *Jennifer Fiorica Delgado*
Jennifer Fiorica Delgado (Bar No. NY296)
Alexander Shalom
Natalie Kraner
Wayne Fang (admitted *pro hac vice*)
Markiana J. Julceus (admitted *pro hac vice*)
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
(862) 926-2029
jdelgado@lowenstein.com
ashalom@lowenstein.com
nkraner@lowenstein.com
wfang@lowenstein.com
mjulceus@lowenstein.com

Jennifer L. Levi
Sarah Austin (admitted *pro hac vice*)
GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
saustin@glad.org

Amy Whelan (*admitted pro hac vice*)
Christopher F. Stoll (*admitted pro hac vice*)
NATIONAL CENTER FOR LESBIAN RIGHTS
1401 21st St.
Ste #11548
Sacramento, CA 95811
(415) 365-1338
awhelan@nclrights.org
cstoll@nclrights.org

*Attorneys for Plaintiff*

17